UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION


MAUDIO RAMON ESPINOZA,

     Petitioner,

v.                                  Case No: 6:26-cv-1101-JSS-DCI

GARRETT RIPA, ACTING
SECRETARY MARKWAYNE
MULLIN, ACTING DIRECTOR-ICE
TODD LYONS, TODD BLANCHE,
and EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW,

     Respondents.

_____/

## **ORDER**

Petitioner, Maudio Ramon Espinoza, is a citizen of Venezuela who entered the United States without inspection on June 6, 2023. (Dkt. 1 at 45; Dkt. 1-2; Dkt. 1-3 at 4; Dkt. 7-1 at 3.) Several days later, Border Patrol agents apprehended Petitioner in Eagle Pass, Texas. (*See* Dkts. 1-2, 1-9.) At that time, Border Patrol agents provided Petitioner with a notice to appear before an immigration judge and arrested him pursuant to a Form I-200 warrant. (*See* Dkt. 1 at 3; Dkt 1-2; Dkt. 1-9.) Shortly thereafter, the agents released Petitioner on his own recognizance. (*See* Dkts. 1-3, 1-4.) For nearly three years, Petitioner was allowed to live in the United States, so long as he complied with the conditions of his release and checked in with United States Immigration and Customs Enforcement (ICE) agents each year. (*See* Dkt. 1-3.) In

May, law enforcement officers stopped Petitioner while he was driving to work. (*See* Dkt. 1 at 25; *see* Dkt. 1-8.) During the stop, the officers determined that Petitioner was in the United States unlawfully and "detained [him] pending [the outcome in] his removal proceedings." (Dkt. 7 at 2; *see* Dkt. 1 at 25 ("Petitioner was arrested by [Florida Highway Patrol] and taken into [Department of Homeland Security (DHS)]/[Immigration and Customs Enforcement (ICE)] custody."); Dkt. 7-1 at 3–5 (explaining that on May 14, 2026, Petitioner was arrested by Border Patrol agents who took him to the Orlando ICE office for processing, before detaining him at the Orange County jail, while awaiting bed space at a facility in Miami).)

Petitioner initiated this case by filing a petition for writ of habeas corpus under 28 U.S.C. § 2241. (Dkt. 1.) Petitioner contends that 8 U.S.C. § 1226—not 8 U.S.C. § 1225—applies to his detention, and that Respondents have not complied with the statute's requirements, thereby violating his constitutional rights under the Fourth and Fifth Amendments. (*See id.* at 4–5, 23–24, 49–52, 55–56.) Specifically, Petitioner contends that Respondents failed to comply with the statutory requirements that he be arrested pursuant to a Form I-200 warrant and provided a bond hearing. (*Id.* at 25, 45–46.) Petitioner further argues that because he was purportedly arrested without a warrant, Respondents lacked statutory authority to detain him at the Orange County jail for more than 48 hours. (*Id.* at 46–48.) Accordingly, he asks that the court issue a writ of habeas corpus requiring Respondents to either immediately release him or provide him a bond hearing. (*See id.* at 59.) Respondents concede that section 1226 applies; they contend that the proper remedy is a bond hearing, not Petitioner's

- 2 -

immediate release.  (*See* Dkt. 7.)

"The Fifth Amendment, as well as the Fourteenth Amendment, protects every [noncitizen within the jurisdiction of the United States] from deprivation of life, liberty, or property without due process of law."  *Mathews v. Diaz*, 426 U.S. 67, 77 (1976); *see Plyler v. Doe*, 457 U.S. 202, 210 (1982) ("Whatever his status under the immigration laws, [a noncitizen] is surely a 'person' in any ordinary sense of that term. [Noncitizens], even [noncitizens] whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments."); *Hincapie v. U.S. Att'y Gen*, 604 F. App'x 882, 884 (11th Cir. 2015) ("The Fifth Amendment right to due process applies to non[]citizens in removal proceedings." (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)); *Rodriguez v. Quinones, Jr.*, No. 6:26-CV-187-PGB-DCI, 2026 WL 194218, at *2 (M.D. Fla. Jan. 26, 2026) ("Noncitizens present in the United States are entitled to due process under the Fifth Amendment[, . . . including] protection against deprivations of liberty, such as immigration detention, without due process of law." (quotation omitted)). Accordingly, "[l]imitations like the Due Process Clause . . . restrict the [g]overnment's power to detain noncitizens," and "[c]ourts must review immigration procedures and ensure that they comport with the Constitution." *J.G. v. Warden, Irwin Cnty. Det. Ctr.*, 501 F. Supp. 3d 1331, 1334 (M.D. Ga. 2020) (citing *Demore v. Kim*, 538 U.S. 510 (2003)).

The Immigration and Nationality Act (INA) establishes the procedures for removing and detaining noncitizens who are unlawfully present in the United States.

*See Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021); *see Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022) ("The INA establishes procedures for the [g]overnment to use when removing certain noncitizens from the United States and, in some cases, detaining them."); *see also Rojas v. U.S. Att'y Gen*, No. 22-13372, 2023 WL 7276652, at *1 (11th Cir. Nov. 3, 2023) ("Removal proceedings before an [i]mmigration [j]udge," as outlined in the INA, "are the exclusive means of determining [a noncitizen's] removability"); *Urra Dorta v. Mordant*, No. 2:26-CV-217-SPC-DNF, 2026 WL 452407, at *1 (M.D. Fla. Feb. 18, 2026) ("The INA establishes two procedures for removing noncitizens from the country.").

There are ordinary removal proceedings, in which DHS may begin removal proceedings against a noncitizen who "is living in the United States without authorization" under section 240 of the INA by providing the noncitizen a notice to appear before an immigration judge. *Johnson*, 594 U.S. at 527 (citing 8 U.S.C. § 1229a); *see Arizona v. United States*, 567 U.S. 387, 407 (2012) ("When [a noncitizen] is suspected of being removable, a federal official issues an administrative document called a [n]otice to [a]ppear."). There are also expedited removal proceedings, in which immigration officers may remove a noncitizen from the United States "without further hearing or review." 8 U.S.C. § 1225(b)(1). Respondents do not contend that Petitioner is subject to expedited removal proceedings. (*See* Dkt. 7.)

In removal proceedings under section 240 of the INA, federal regulations require that a noncitizen receive written notice of the proceedings via a notice to appear. *See* 8 U.S.C. § 1229(a)(1) ("In removal proceedings under section [240],

written notice (in this section referred to as a 'notice to appear') *shall* be given in person to the [noncitizen]." (emphasis added)); *Dragomirescu v. U.S. Att'y Gen.*, 44 F.4th 1351, 1354 (11th Cir. 2022) (observing that a notice to appear must be provided "in every removal case"). The notice acts as "a charging document" that "informs the [noncitizen] of the specific charges against him and outlines their legal and factual basis." *Dragomirescu*, 44 F.4th at 1354; *see Jimenez-Perez v. U.S. Att'y Gen*, 817 F. App'x 676, 680 (11th Cir. 2020) ("An immigration court is vested with jurisdiction to conduct removal proceedings upon the filing of a charging document. [A notice to appear] is a charging document." (citation omitted)).

"The INA further provides that DHS may arrest and detain" noncitizens who are placed in section 240 deportation proceedings "pending a decision on whether [they are] to be removed from the United States." *Johnson*, 594 U.S. at 527 (citing 8 U.S.C. § 1226); *see Arizona*, 567 U.S. at 407 ("The federal statutory structure instructs when it is appropriate to arrest [a noncitizen] during the removal process."). According to federal regulations, DHS may issue a warrant for the noncitizen's arrest "[a]t the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, . . . under the authority of Form I–200, Warrant of Arrest." 8 C.F.R. § 1236.1; *see* 8 U.S.C. § 1226 ("On a warrant issued by the [a]ttorney [g]eneral, [a noncitizen] may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States."). When a noncitizen is arrested and detained on such a warrant, the Attorney General may continue to detain the noncitizen, release him on a bond of at least $1,500, or

release him on conditional parole. *See* 8 U.S.C. § 1226(a)(1)–(2). If a noncitizen is released on conditional parole, the Attorney General may, at any time, revoke the noncitizen's parole, "rearrest the [noncitizen] *under the original warrant*, and detain the [noncitizen]." *Id.* § 1226(b) (emphasis added).

Here, Petitioner has provided evidence that Respondents issued a warrant for his arrest on June 11, 2023, which he received along with his notice to appear before an immigration judge, in accordance with federal regulations. (*See* Dkt 1-2 (showing that Petitioner was served with a warrant for his arrest on June 11, 2023); Dkt. 1-9 (showing that Petitioner was issued a notice to appear on June 11, 2023.) *See* 8 C.F.R. § 1236.1 (providing that DHS may issue a warrant for the noncitizen's arrest "*[a]t the time of issuance of the notice to appear*, or at any time thereafter and up to the time removal proceedings are completed, . . . under the authority of Form I–200, Warrant of Arrest." (emphasis added)). That Respondents then released Petitioner on his own recognizance is of no moment, as Respondents retained statutory authority to rearrest and detain him under the original warrant. *See* 8 U.S.C. § 1226(b). Accordingly, this case is distinguishable from others in which immigration officers lacked statutory authority to arrest and detain noncitizens. *See Guarnizo v. Quinones*, No. 6:26-CV-624-JSS-RMN, 2026 WL 982816, at *4 (M.D. Fla. Apr. 13, 2026) (concluding that immigration officers lacked statutory authority to perform a warrantless arrest, where they failed to show that the noncitizen posed a flight risk); *Landaverde Ardon v. Mina*, No. 6:26-CV-313-JSS-LHP, 2026 WL 530199, at *3 (M.D. Fla. Feb. 26, 2026) ("Because Respondents arrested Petitioner nearly two weeks before issuing his notice

to appear, they lacked statutory authority to arrest Petitioner, as removal proceedings were not pending against him at that time.").

Because Petitioner was detained while physically present in the United States, section 1226 governs his detention. *Jennings v. Rodriguez*, 583 U.S. 281, 297, 303 (2018) (explaining that section 1225(b) "applies primarily" to noncitizens "seeking entry into the United States," while section 1226 applies to noncitizens "already present in the United States"); *see Johnson*, 596 U.S. at 579 (explaining that section 1226(a) "governs the detention of certain noncitizens present in the country who were inadmissible at the time of entry or who have been convicted of certain criminal offenses since they were admitted"); *Johnson*, 594 U.S. at 543 (differentiating between sections 1225 and 1226, noting that each represents a "sequential step[] of the removal process," as section 1225 "provides instructions for inspecting [noncitizens], expediting the removal of some, and referring others for a removal hearing" while section 1226 "authorizes the arrest and detention of [noncitizens] pending a decision on whether they are to be removed"); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, No. 25-14065, 2026 WL 1243395, at *1 (11th Cir. May 6, 2026) ("The text and statutory structure of the INA, bolstered by the long history of detention across our immigration laws and the congressional purpose in passing [the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA)] . . ., yield the conclusion that no-bond detention [under section 1225(b)(2)(A)] generally applies to arriving [noncitizens] seeking lawful entry to the country, and not to [noncitizens] who are

simply present here."); *Claros v. Quinones*, No. 6:26-CV-208-JSS-LHP, 2026 WL 406776, at *4 (M.D. Fla. Feb. 13, 2026) (collecting cases).  Respondents concede this point.  (*See* Dkt. 7 at 4–5 (acknowledging that the Eleventh Circuit's decision in *Hernandez Alvarez* controls in this case and that, as a result, "Petitioner is detained under [section] 1226(a).").)  Because Petitioner is detained under section 1226, federal regulations require that he receive a bond hearing.  *See Jennings*, 583 U.S. at 306. Respondents recognize this as well.  (*See* Dkt. 7 at 4–5 ("Based on the decision in *Hernandez Alvarez*, Petitioner will be entitled to an individualized bond hearing under 8 U.S.C. § 1226(a).").)

Two additional issues merit discussion.  First, Petitioner alleges that he was detained at the Orange County jail pursuant to an immigration detainer for more than 48 hours, in violation of federal regulations.  (*See* Dkt. 1 at 4.)  "An immigration detainer serves to advise another law enforcement agency that . . . [DHS] seeks custody of [a noncitizen] presently in the custody of that agency, for the purpose of arresting and removing the [noncitizen] and is a request that such agency advise . . . [DHS], prior to release of the [noncitizen], in order for . . . [DHS] to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible." *Themeus v. U.S. Dep't of Just.*, 643 F. App'x 830, 831 (11th Cir. 2016) (emphasis added and quotation omitted).  Under federal regulations, local law enforcement shall, upon receiving an immigration detainer, "maintain custody of the [noncitizen] for a period not to exceed 48 hours, excluding Saturdays, Sundays, and holidays in order to permit assumption of custody

by . . . [DHS]." *See* 8 C.F.R. § 287.7(d). Petitioner contends that his prolonged detention at the Orange County jail "raises Fourth Amendment concerns [of an] unlawful seizure." (*See* Dkt. 1 at 18–20, 49–59.) Although the petition presents alternative requests for Petitioner's immediate release and a bond hearing, (*see id.* at 59), Petitioner does not tie this purported Fourth Amendment violation to his request for immediate release, (*see id.* at 18–20, 49–59). Nor does he cite any authority to suggest that Respondents' purported violation of section 287.7 requires such relief. (*See id.*) *See Matias v. Sessions*, 871 F.3d 65, 71 (1st Cir. 2017) ("[N]ot every procedural misstep or difficulty raises anything like a constitutional issue."). Accordingly, to the extent that Petitioner believes his prolonged detention at the Orange County jail warrants his immediate release, the cursory nature of his analysis is fatal to his request, as a party abandons issues that it raises in passing, asserts perfunctorily, buries within its brief, or uses merely to support other arguments. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681–82 (11th Cir. 2014); *see United States v. Markovich*, 95 F.4th 1367, 1379 (11th Cir. 2024) (concluding that a plaintiff forfeited arguments that were not supported by legal authority).

Finally, Petitioner asks that the court perform his bond hearing. (*See* Dkt. 1 at 37, 59.) While Petitioner is entitled to a bond hearing, federal regulations require the hearing to be held before an immigration judge, not this court. *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1); *see also Johnson*, 594 U.S. at 527 (explaining that, under section 1226, "DHS may arrest and detain [a noncitizen] pending a decision on whether the [noncitizen] is to be removed from the United States. [Noncitizens] who

- 9 -

are arrested and detained may generally apply for release on bond or conditional parole. . . . If DHS denies the [noncitizen's] request, the [noncitizen] may request a bond hearing *in front of an immigration judge* by filing an application for a change in the [noncitizen's] detention conditions." (emphasis added)).  To the extent that Petitioner believes that a bond hearing before an immigration judge will be illusory, he must exhaust his administrative remedies with respect to his federal detention before seeking habeas relief on that score.  *See McGee v. Warden*, 487 F. App'x 516, 518 (11th Cir. 2012) ("[The petitioner] has not . . . establish[ed] that there is a futility exception to the requirement to exhaust administrative remedies under [28 U.S.C. § 2241].  Because [the petitioner] did not exhaust his administrative remedies, the district court did not have jurisdiction to review his [28 U.S.C. § 2241] petition.").

Accordingly:

1.    Petitioner's request for a Writ of Habeas Corpus (Dkt. 1) is **GRANTED in part**. The petition is **GRANTED** to the extent that, on or before June 10, 2026, Respondents shall ensure that Petitioner receives the statutory process required under 8 U.S.C. § 1226—which includes a bond hearing—or shall release him under the terms of his Order of Release on Recognizance (Dkt. 1-3).

2.    By June 12, 2026, the parties shall file a joint status report informing the court of the status of this case.

**ORDERED** in Orlando, Florida, on June 1, 2026.

_____
JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

- 11 -